1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10   BARBARA TANGUAY-EMERT,            )   No.  CV 05-5324-PJW
                                       )
11                  Plaintiff,         )
                                       )   MEMORANDUM OPINION AND ORDER
12             v.                      )
                                       )
13   JO ANNE B. BARNHART,              )
     COMMISSIONER OF THE SOCIAL        )
14   SECURITY ADMINISTRATION,          )
                                       )
15                  Defendant.         )
                                       )

16

17                                     I.

18                               INTRODUCTION

19        Plaintiff Barbara Tanguay-Emert appeals the decision of Defendant

20   Social Security Administration ("the Agency"), denying her claim for

21   disability insurance benefits ("DIB").  The Agency concluded that,

22   absent illicit drug use, Plaintiff was capable of working.  Plaintiff

23   contends that this conclusion was not supported by the evidence and

24   was contradicted by Plaintiff's treating physicians.  For the reasons

25   set forth below, the Court finds that the Agency's determination that

26   Plaintiff's physical and mental impairments did not preclude her from

27   working is supported by substantial evidence in this record and is

28   affirmed.

II.

SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff is a 44-year old woman, with a high school education and past work as a model/actress and owner and operator of a video business. (Administrative Record ("AR") at 146-155.) In January 2000, her video business failed and she stopped working. (AR 74.) Thereafter, she applied for DIB, alleging that she was unable to work due to total left hip replacement, hepatitis, and bi-polar disorder. (AR 147.) Her claim was denied by the Agency and she requested and was granted a hearing before an Administrative Law Judge ("ALJ"). On June 2, 2004, and August 18, 2004, the ALJ held hearings in her case. (AR 39-70, 71-92.) Plaintiff appeared with counsel and testified at both hearings. A vocational expert and a medical expert also testified. (AR 43-68.)

On October 12, 2004, the ALJ issued a decision denying Plaintiff's application for DIB. (AR 20-30.) He concluded that Plaintiff's physical impairment--a painful right hip in need of replacement--and her mental impairments--depression and schizoaffective disorder--would not prevent her from performing light work in the economy. (AR 29.) Plaintiff appealed the ALJ's decision to the Appeals Council, submitting additional hospital and treatment records. (AR 377-559.) The Appeals Council affirmed the ALJ's decision. (AR 6-9.) Thereafter, Plaintiff filed this action, seeking reversal of the Agency's decision.

III.

ANALYSIS

Plaintiff contends that the ALJ erred when he concluded that, absent drug use, she had the mental and emotional capacity to work.

2

1  She also argues that the ALJ's conclusion that Plaintiff's physical

2  impairments did not preclude her from working was contrary to the

3  evidence.  As explained below, the ALJ's determination that

4  Plaintiff's physical and mental impairments did not preclude her from

5  working is supported by substantial evidence in the record and will

6  not be disturbed.

7  A.    Standard of Review

8      "Disability" under Agency regulations is defined as the inability

9  to perform any substantial gainful activity due to any "medically

10 determinable physical or mental impairment which can be expected to

11 result in death or which has lasted or can be expected to last for a

12 continuous period of not less than 12 months."  *See* 42 U.S.C.

13 § 423(d)(1)(A).  The Court may overturn the ALJ's decision that a

14 claimant is not disabled only if the decision is not supported by

15 substantial evidence or if the decision is based on legal error.

16 *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)(quoting *Green*

17 *v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).  "Substantial

18 evidence" is such "relevant evidence as a reasonable mind might accept

19 as adequate to support a conclusion."  *Id*. at 750.  It is "more than a

20 mere scintilla but less than a preponderance."  *Tidwell v. Apfel*, 161

21 F.3d 599, 601 (9th Cir. 1998).  This Court must uphold the ALJ's

22 conclusion even if the evidence in the record "is susceptible to more

23 than one rational interpretation."  *Andrews v. Shalala*, 53 F.3d 1035,

24 1039-40 (9th Cir. 1995).

25

26

27

28

B.    The ALJ's Finding That, Absent Drug Abuse, Plaintiff's

      Mental/Emotional Impairments Did Not Preclude Her From Working Is

      Supported By Substantial Evidence In The Record

      The ALJ recognized that Plaintiff suffered from a mood disorder

and depression, which were severe impairments, but concluded that,

absent Plaintiff's abuse of drugs, she would not be impaired.  (AR

21.)  Plaintiff claims that the ALJ erred in reaching this conclusion.

She argues that the ALJ failed to first proceed through the five-step

sequential evaluation process--without separating Plaintiff's drug

use--and determine if Plaintiff was able to work, and then, assuming

he concluded that she could not work, analyze whether she could work

if she was not abusing drugs.  (Joint Stipulation at 18-19.)

Plaintiff also finds error in the ALJ's reliance on the non-treating

doctors' opinions instead of the treating doctors's opinions.  She

maintains that her treating doctor had determined that her psychiatric

problems were not related to her drug use, and that the ALJ was bound

to accept this determination.  As explained more fully below, the ALJ

analyzed this case properly, first determining that Plaintiff could

not work and then determining that she could work if she was not

abusing drugs.  In addition, the ALJ's reliance on the non-treating

doctors was appropriate in this case.

      1.    The ALJ Followed The Proper Procedure

      Plaintiff complains that the ALJ failed to properly analyze the

effect of Plaintiff's drug abuse on her ability to work.  Plaintiff

contends that the ALJ should have first performed the five-step

analysis without separating Plaintiff's drug use and then, if he

concluded that she could not work, determined whether she would still

be unable to work if she was not abusing drugs.  Plaintiff points out

1  that the ALJ neglected to cite either the regulation (20 C.F.R.

2  § 404.1535) or the case law (*see, e.g., Bustamonte v. Massanari*, 262

3  F.3d 949, 955 (9th Cir. 2001)), governing the proper procedure.  She

4  argues that this is proof that he did not follow the proper procedure.

5       It is clear from the record, both the transcript of the

6  administrative hearing and the ALJ's written decision, that the ALJ

7  understood the proper procedure for analyzing Plaintiff's disability

8  claim and followed that procedure in finding that Plaintiff could

9  work.  At the administrative hearing on August 18, 2004, the ALJ, in

10 questioning the medical expert, explained that the proper procedure

11 was to first consider Plaintiff's condition taking into account her

12 drug abuse and then analyze her condition absent drug abuse.  (AR 50-

13 51.)  In his written decision, the ALJ also made clear that he was

14 analyzing Plaintiff's case first with her drug abuse in mind and then

15 without it.  (AR 30.)  Plaintiff's claim here that the ALJ failed to

16 follow the proper procedure is not supported by the record and is

17 rejected.  Plaintiff's contention that the ALJ's failure to cite the

18 regulation or the case law is evidence of his failure to follow the

19 proper procedure is equally unavailing.  The ALJ followed the law in

20 reaching his decision--which is clear from his comments and his

21 decision--and that is all that matters.  His failure to cite the

22 regulation or the case law does not render his decision infirm.

23      2.   The ALJ Properly Relied On The Non-Treating Physicians'

24           Opinions

25      Plaintiff claims that the ALJ improperly relied on the non-

26 treating doctors' opinions.  The Court finds this claim without merit,

27 too.

28

5

1      The starting point in this analysis is a point seemingly

2 overlooked by Plaintiff in her brief--the fact that the ALJ concluded

3 that Plaintiff was not credible.  The Court need not perform an in-

4 depth analysis on the ALJ's findings in this regard because Plaintiff

5 has elected not to challenge these findings.  Mindful that

6 "[c]redibility determinations are the province of the ALJ," *see Fair*

7 *v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), this Court will not

8 second-guess an unchallenged credibility finding.  *See Solomon v.*

9 *Secretary of Health and Human Services*, No. 91-CV-77171 DT, 1992 WL

10 478586, at *2 (E.D. Mich. Aug. 13, 1992)("The Plaintiff has not

11 challenged the ALJ's determination of her credibility, and the Court

12 accepts it as accurate.").  Because Plaintiff has not challenged the

13 ALJ's adverse credibility determination, and because her treating

14 physician's opinion was in large measure based on Plaintiff's

15 subjective complaints, she cannot "show that the ALJ erred in [his]

16 decision not to credit [the treating physician's] assessment . . . ."

17 *See Siska v. Barnhart*, No. C 00-4788 MMC, 2002 WL 31750220, at *3

18 (N.D. Cal. Dec. 4, 2002).

19      Plaintiff was treated by psychiatrist Ike Ohiaeri from August

20 2003 to March 2004.  Dr. Ohiaeri concluded, essentially, that

21 Plaintiff could not work due to her inability to cope with the demands

22 of a job.  (AR 333-40.)  Stripping away from Dr. Ohiaeri's opinion

23 those portions of it that are based on Plaintiff's subjective

24 complaints, however, leaves very little left of the opinion.  Much of

25 Dr. Ohiaeri's clinical impressions were derived from what Plaintiff

26 told him.  For example, when Plaintiff first sought treatment from Dr.

27 Ohiaeri in August 2003, he noted in Plaintiff's chart that she told

28 him that she was depressed.  (AR 312.)  She claimed that she suffered

from hypersomnolence (i.e., tendency towards deep and long sleep caused by psychological factors), isolation, and hallucinations. (AR 312.) But Plaintiff did not offer objective evidence to support these claims; she merely recited them to Dr. Ohiaeri and he accepted them at face value. Dr. Ohiaeri also asked Plaintiff to fill out a "Self-Rating Test," in which she reported her symptoms so that Dr. Ohiaeri could evaluate her. (AR 315.) In completing this form, Plaintiff provided Dr. Ohiaeri with information about her health, including whether she was sad, hungry, unable to sleep, etc. This reporting by Plaintiff was completely subjective, and was used by Dr. Ohiaeri to formulate his diagnosis. (AR 314.)

Thus, Dr. Ohiaeri's ultimate opinion--that Plaintiff could not maintain employment due to her inability to cope--is tainted by Plaintiff's lack of credibility and is not persuasive. *See Siska*, 2002 WL 31750220, at *3. The ALJ's failure to accept Dr. Ohiaeri's opinion, therefore, was not erroneous.

What remained was Dr. Cable's and Dr. Goldman's view--that Plaintiff could work--which was endorsed by the state agency review physicians and accepted by the ALJ. Dr. Goldman is a clinical psychologist. She performed a complete psychological evaluation of Plaintiff and administered a battery of tests. (AR 240-46.) Based on the results of her work, Dr. Goldman concluded that Plaintiff's psychological impairments did not preclude her from working. (AR 245-46.) Dr. Cable, the non-examining medical expert, also concluded that, absent drug use, Plaintiff's psychological impairments did not preclude her from working. (AR 51.) The two reviewing physicians arrived at the same conclusion. (AR 247-49, 251.)

1    In sum, the ALJ was presented with differing views from

2 Plaintiff's treating psychiatrist and the other doctors and

3 psychologist who offered opinions in this case.  He properly

4 discounted the treating psychiatrist's opinion because it was

5 dependent to a great extent on Plaintiff's subjective complaints and

6 the ALJ found that these complaints were not credible.  The ALJ then

7 resorted to the opinions of the non-treating medical sources--which he

8 is allowed to do--and concluded that, absent drug use, Plaintiff could

9 work.  *See Andrews*, 53 F.3d at 1041 (finding ALJ can rely on

10 non-treating doctors' opinions when supported by other evidence in the

11 record and consistent with it).  In doing so, the ALJ properly

12 resolved the conflicts in the medical record, and Plaintiff's

13 objections to his findings are overruled.[1]  *See Magallenes*, 881 F.2d

14 at 751 (noting that ALJ is tasked with resolving conflicts in the

15 medical evidence).

16    3.    The ALJ Did Not Misread Dr. Ohiaeri's Reports

17    Plaintiff contends that the ALJ misinterpreted Dr. Ohiaeri's

18 opinion.  She alleges that Dr. Ohiaeri had separated Plaintiff's drug

19 use from her other impairments when concluding that she could not

20 work.  (Joint Stipulation at 21.)  Plaintiff argues that it is

21 "implicit in Dr. Ohiaeri's [] assessments" that Plaintiff's

22

23

24    [1]  Plaintiff contends that the ALJ relied solely on Dr. Cable's
opinion and argues that he was not allowed to do so because Dr. Cable
was a non-treating, non-examining physician.  As the Agency points
25 out, however, the ALJ and Dr. Cable relied on Dr. Goldman's work, too,
and Dr. Goldman had performed independent, objective tests and a
26 complete psychological evaluation in formulating her opinion.  (AR
240-45.)  Certainly, the ALJ and Dr. Cable were allowed to consider
27 Dr. Goldman's work in reaching their conclusions.  *Andrews*, 53 F.3d at
28 1041.

1 psychological impairments exist separate and apart from her drug

2 abuse.  (Joint Stipulation at 21-22.)  Plaintiff contends, therefore,

3 that the ALJ should have relied on Dr. Ohiaeri's opinion.  The Court

4 disagrees.

5      In March 2004, Dr. Ohiaeri diagnosed Plaintiff with

6 schizoaffective disorder, bipolar type and opioid dependence in

7 remission.  (AR 333-40.)  Dr. Ohiaeri concluded that Plaintiff was

8 unable to work.  Plaintiff claims that this is evidence that Dr.

9 Ohiaeri separated her drug use from her psychiatric ailments and

10 concluded that, even absent drug use, she was impaired.

11      In making this argument, Plaintiff completely ignores the fact

12 that the ALJ found her to be incredible.  Dr. Ohiaeri's opinion was

13 based solely on Plaintiff's claim that she had stopped using drugs.

14 There is no other evidence to support it.  If Plaintiff is not to be

15 believed, her doctor's opinion based on statements she made to him

16 cannot be believed either.  Thus, Plaintiff's argument that Dr.

17 Ohiaeri's opinion that Plaintiff could not work even absent drug abuse

18 is rejected.

19      The medical evidence suggests that Plaintiff could function quite

20 well, absent her drug use.  For example, in May 2003, she was

21 hospitalized after she tried to kill herself, at which time she

22 exhibited psychotic symptoms.  (AR 294-95.)  At the time, blood tests

23 revealed that she had opiates and methamphetamine in her system.  (AR

24 501.)  After these drugs passed through her system during her

25 hospitalization, she was stable and released from the hospital.  (AR

26 278-81.)

27      For this reason, the ALJ's failure to accept Dr. Ohiaeri's views

28 was not erroneous.

9

1  C.  <u>The ALJ's Determination That Plaintiff Had The Physical Capacity</u>

2  <u>To Work Was Not Erroneous</u>

3  Plaintiff takes exception to the ALJ's determination that she had

4  the physical capacity to work.  She contends that, due to pain in her

5  right hip, she was not capable of sitting for prolonged periods (i.e.,

6  two hours in an eight-hour work day) and could not stand or walk for

7  more than an hour a day.  (Joint Stipulation at 30.)  For the

8  following reasons, this claim, too, is rejected.

9  The starting point in this analysis, like the last, is the ALJ's

10  finding that Plaintiff was not credible.  Having not challenged that

11  finding, Plaintiff cannot now argue that the ALJ erred when he

12  discounted the opinions of Plaintiff's doctors who, based, in part, on

13  Plaintiff's subjective complaints, found that she was limited in her

14  ability to sit and stand.[2]  *See Siska*, 2002 WL 31750220, at *3.

15  Plaintiff argues that not all of the support for these doctors'

16  findings came from Plaintiff's subjective complaints.  The Court

17  agrees, but, as the ALJ concluded, the doctors' clinical findings

18  alone did not support their views that Plaintiff could not walk,

19  stand, or sit for any appreciable length of time.  Nor did the other

20  evidence in the record.  To begin with, Plaintiff testified that she

21  could sit and stand long enough to be able to work all day.  (AR 85-

22

23

24  [2]  The Court also notes that, when the Agency arranged for
Plaintiff to be examined by a doctor to test her claims of
incapacitation due to hip pain, Plaintiff elected not to keep the

25  appointment, thwarting the Agency's efforts to confirm or deny these

26  claims.  (AR 274.)  The ALJ was right in taking this into account when
assessing Plaintiff's impairment.  *See, e.g., Pearce v. Sullivan*, 871

27  F.2d 61, 64 (7th Cir. 1989)(holding Social Security Administration
properly considered claimant's failure to attend consultative exam in

28  denying benefits claim).

1  86.)   Further, objective tests performed by various doctors showed

2  that Plaintiff could sit, stand, and stoop without pain.   (AR 355.)

3       Plaintiff's alleged inability to work was not based on a physical

4  inability to sit or stand or move her limbs.   It was based on her

5  claim that she experienced too much pain to sit or stand for an

6  extended period of time.   The limitations imposed by her doctors

7  reflected that claim.   (AR 360.)   For example, when Plaintiff visited

8  Dr. Styner for a one-time examination, she told him that she had

9  sharp, constant pain in her right hip.   (AR 353.)   She claimed that

10 she could only stand for 15 minutes.   (AR 353.)   Dr. Styner

11 incorporated Plaintiff's complaints in his opinion, concluding that

12 Plaintiff was precluded from walking or standing for more than 30

13 minutes.   (AR 360.)   Because Plaintiff's subjective claims were

14 discredited, however, the doctors' opinions limiting her ability to

15 work based on those claims were properly discounted.

16       For that reason, the ALJ did not err when he determined that

17 Plaintiff could perform a job that required her to sit for two hours

18 at a time, despite the fact that Plaintiff's doctors limited her to

19 sitting for less time.   Plaintiff believed that she was capable of

20 sitting that long, as did the medical expert.   The opinions of

21 Plaintiff's treating doctors were properly discounted because they

22 were based in part on Plaintiff's complaints--and Plaintiff was found

23 to be not credible--and they were not otherwise supported by objective

24 evidence in the doctors' records.[3]

25 _____

26      [3]  Plaintiff contends that the ALJ should have re-contacted the
   treating doctors if he believed that their records were incomplete or
27 that the doctors' findings did not support their conclusions.   She
   points out, for example, that Dr. Mogul's records did not include
28 chart notes or other documents supporting his findings, and argues

1                                    IV.

2                                CONCLUSION

3        For all these reasons, Defendant's summary judgment motion is

4   granted and Plaintiff's is denied.  The Agency's decision is hereby

5   affirmed and the case is dismissed with prejudice.

6

7        DATED:    February __5__, 2007.

8

9                                 _____
                                  PATRICK J. WALSH
10                                UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

    S:\PJW\Cases-Soc Sec\TANGUAY\Memo_Opinion.wpd
24

25  that the ALJ should have asked for them.  (Joint Stip. at 31.)
    Though, technically, the ALJ should have asked Dr. Mogul to submit
26  additional records if they existed, Plaintiff submitted almost two
    hundred pages of records to the Appeals Council when she appealed the
27  ALJ's decision denying her claim and did not submit any records from
    Dr. Mogul  (AR 377-558.)  Presumably, the records do not exist.
28

                                     12